```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JAMES M. SHIELDS,
                                                                    MEMORANDUM AND ORDER
                Plaintiff,                                          11-CV-2088 (FB)

        -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
---------------------------------------------------------------x
```

*Appearances:*
*For the Plaintiff:*
ANTHONY M. CAMISA, ESQ.
323 Willis Avenue
Mineola, NY 11501

*For the Defendant:*
JAMES R. CHO, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Plaintiff James M. Shields seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the parties' motions for judgment on the pleadings are denied, and the case is remanded for further proceedings.

I

Shields, a former diesel mechanic and construction laborer, applied for benefits on June 13, 2008. He alleges that he became disabled on October 10, 2006, after an injury to his right hand required amputation of four fingers. After the Social Security Administration denied his application for benefits, Shields requested a hearing before an Administrative Law

Judge ("ALJ").

Applying the familiar five-step process, the ALJ first found that Shields had not engaged in substantial gainful activity since October 10, 2006. Second, the ALJ found that Shields suffered from the following severe impairments: residuals of a crush injury to the right hand with amputation of four fingers, single vessel coronary artery disease, status-post stent insertion, and hypertension. Third, the ALJ found that none of Shields's impairments met the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Fourth, the ALJ determined that Shields retains the residual functional capacity ("RFC") to perform "less than light work" because he has no limitations in sitting, standing, walking, and using his left hand, but cannot use his right hand for work-related activities. In light of those limitations, the ALJ found that Shields cannot perform any past relevant work. Fifth, with the assistance of testimony from a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Shields can perform. Accordingly, in a decision dated March 31, 2010, the ALJ determined that Shields was not disabled under the Act.

On March 4, 2011, the Appeals Council denied Shields's request for review, rendering the Commissioner's decision to deny benefits final. In its decision, the Appeals Council found that two new pieces of evidence submitted by Shields – residual functional capacity assessments which postdate the hearing before the ALJ – did not warrant remand or "provide a basis for changing the [ALJ's] decision." A.R. at 2.

II

In evaluating the Commissioner's final ruling, the district court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting

2

the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007) (quoting *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004)). Shields claims that the Commissioner erred in the following respects: (1) that the Appeals Council failed to properly consider new evidence; (2) that the ALJ erred in finding that Shields's depression is not a severe impairment; and (3) that the ALJ improperly evaluated the credibility of Shields's purported symptoms.

**A. New Evidence**

The Appeals Council erred when it determined that new evidence, in the form of an assessment provided by Dr. Y. Weiss, was insufficient to trigger review of the ALJ's disability determination.

When "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez v. Chater*, 77 F.3d 41, 45 (3d Cir. 1996). The additional evidence becomes part of the administrative record considered by the district court. *Id.* at 45-46. The Appeals Council is obligated to consider evidence that is (1) new and not "merely cumulative of what is already in the record" and (2) material, meaning "both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). Materiality requires "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Id.* When the Appeals Council fails to properly consider new, material evidence, the appropriate "course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Shrack v. Astrue*, 608 F. Supp. 2d

3

297, 302 (D. Conn. 2009). The Commissioner concedes that Dr. Weiss's assessment is new, but denies that it provided a basis for disturbing the ALJ's decision.

On February 9, 2010, approximately two weeks after Shields's hearing before the ALJ, Dr. Weiss completed a residual functional capacity questionnaire. Dr. Weiss noted that he met with Shields for "cardiology follow up" three to four times per year. A.R. at 311. He described the symptoms of Shields's cardiac condition and the extent to which that condition prevented him from standing, lifting, or participating in daily activities. *See* A.R. at 311-16.

There is a reasonable possibility that this evidence could have influenced the ALJ's disability determination. The ALJ found that "single vessel coronary artery disease" and "status-post stent insertion" qualified as severe impairments, yet the administrative record upon which she relied contained limited information on those conditions. At Shields's hearing, the ALJ requested "an updated report on the heart condition" from Dr. Weiss, Shields's treating physician for his cardiac condition. A.R. at 32. The ALJ also told Shields that she "need[ed] to get the records from your doctor for you, regarding your heart condition because we don't have updated treatment records on that . . . at which point I can issue a written decision." A.R. at 51. Clearly, the ALJ believed that the treatment records from Dr. Weiss were important for evaluating Shields's disability and could have an impact on her decision. Thus, the Appeals Council improperly determined that the new evidence submitted by Dr. Weiss was immaterial.[1] This case should be remanded for the ALJ to consider the

---

[1] Shields also contends that new evidence submitted by Dr. Harvey Zaltzman, regarding Shields's mental health, was material and warranted review of the ALJ's decision. Dr. Zaltzman's report states, in a perfunctory manner, that Shields suffered from mental health problems, but does not provide any details on the doctor's treatment relationship with Shields or the extent to which, if at all, mental impairments

4

evidence submitted by Dr. Weiss.  To the extent necessary, the ALJ should also obtain additional information regarding Shields's cardiac impairment, consistent with the ALJ's affirmative duty to develop the record.  *See Perez*, 77 F.3d at 47.

Shields also argues that the vocational expert testimony upon which the ALJ relied does not constitute "substantial evidence" because the hypothetical circumstances presented to the expert were inconsistent with Shields's actual limitations.  In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument.  On remand, the ALJ will re-assess the medical record and pose hypothetical questions to a vocational expert that accurately reflect Shields's impairments.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (hypotheticals posed to a vocational expert are appropriate when "there is substantial record evidence to support the assumption upon which the vocational expert based his opinion.").

**B. Depression**

Shields also argues that the ALJ erred in finding that he did not suffer from depression.  Contrary to Shields's assertion that the ALJ should have considered depression as one of his medically determinable impairments during step two of her inquiry, the issue was raised only in passing at his hearing: "Q. Is there any other condition that you suffer from? A. Depression that's [inaudible]. Q. Are you treated for that at all? A. No." A.R. at 42.  The only mention of depression in the medical record came from Shields's occupational therapist, Carlos Martino, who wrote that Shields suffered from depression secondary to his chronic pain. A.R. at 308.  The ALJ found that Martino "lacks the knowledge and expertise

---

impaired Shields's ability to work.

5

to offer such a diagnosis" of a mental impairment and that "there is no other evidence of such a condition." A.R. at 22.

The claimant bears the burden of "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [his] medical impairment(s)." 20 C.F.R. § 404.1512(a). The Commissioner "will consider only impairment(s) you say you have or about which we receive evidence." *Id.* Shields submitted no reliable medical evidence establishing that he suffered from and received treatment for a severe mental impairment. *See Dixon v. Shalala*, 54 F.3d 1019, 1025 (2d Cir. 1995) (step two of the inquiry is meant to screen out "*de minimis* cases."). The ALJ may "properly refuse to find a disability in the absence of any objective medical evidence of plaintiff's [condition] at the time of the claimed disability," and "is entitled to consider plaintiff's failure to seek failure for [his] mental condition." *Moscatiello v. Apfel*, 129 F. Supp. 2d 481, 489 (E.D.N.Y. 2001) (quoting *Peterson v. Gardner*, 391 F.2d 208, 209-10 (2d Cir. 1968)). The ALJ was not obligated to find a severe impairment based on Shields's conclusory, vague mentions of depression.

**C. Credibility Determination**

Finally, Shields contends that the ALJ did not properly consider whether Shields's cardiac condition could reasonably be expected to produce his subjective symptoms. In evaluating the credibility of a claimant's statements about his condition and the limitations caused by it, an ALJ must determine (1) whether the claimant has medically determinable impairments that "could reasonably be expected to produce" the "symptoms alleged," and (2) the extent to which those symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(a). It is not necessary to address this argument. As has already been discussed, on

remand the ALJ will consider the evidence in the record in light of the new evidence from Dr. Weiss on Shields's cardiac condition. That consideration will include a determination as to whether Shields's cardiac impairment could reasonably be expected to produce his alleged symptoms, and whether those symptoms limited his ability to work.

### III

For the foregoing reasons, the parties' motions for judgment on the pleadings are denied and the case is remanded for further proceedings. On remand, the ALJ should consider evidence of Shields's cardiac condition, most importantly the residual functional capacity evaluation submitted by Dr. Weiss. After considering this evidence in light of the entire record and redetermining Shields's RFC, the ALJ should reassess the credibility of Shields's subjective symptoms and if needs be elicit new vocational expert testimony on what jobs in the national economy Shields can perform.

**SO ORDERED.**　　　　　　　　　s/ Judge Frederic Block

　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
May 22, 2012